FILED

2022 Jan-31  AM 10:10
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

**WILLIAM R. HUGUNINE,** *et al.*,
    **Plaintiffs,**

**v.**

                         **Case No. 1:20-cv-1883-CLM**

**LAKE HOMES REALTY, LLC,**
*et al.*,
    **Defendants.**

## <u>MEMORANDUM OPINION AND ORDER</u>

The Hugunines sued Lake Homes Realty and several of its agents based on Lake Homes' involvement in a real estate transaction. The defendants argue in a motion to dismiss that, among other things, the Hugunines contractually released them from liability. (Doc. 46). After careful review, the Court agrees and dismisses the second amended complaint without prejudice. (Doc. 42).

## FACTUAL AND PROCEDURAL BACKGROUND

In analyzing a Rule 12(b)(6) motion to dismiss, the Court must accept the plaintiffs' well-pleaded allegations in the complaint as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *Crowder v. Delta Air Lines, Inc.*, 963 F.3d 1197, 1202 (11th Cir. 2020). And "the court may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed." *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005).

## I.     Factual Background

William and Frances Hugunine bought property from Anthony and Terri Riccio in Talladega County, Alabama, in November 2019. (Doc. 42 at 3). This lawsuit arises from that purchase.

Nicole Anderson, an agent of Lake Homes Realty, listed the Riccio's property. (*Id.* at 4).[1] The Hugunines entered an agency agreement with Tracy Boyd, another Lake Homes agent, to help them find and purchase a property. (*Id.*). They allege that they didn't know that Boyd was acting as a "consensual dual agent" for the Riccios' property, which was listed by another Lake Homes agent. (*Id.* at 4).

Boyd visited the Riccios' property with the Hugunines. (*Id.*). Boyd walked the property with the Hugunines and pointed out all of the relevant boundaries. (*Id.*). The Hugunines then made a written offer to buy the property. (*Id.*; *see also* doc. 46-1). And after reaching an agreement, the Hugunines and Riccios signed a written contract for the property. (Doc. 42 at 2; *see also* doc. 46-2).

After purchasing the property, the Hugunines discovered three problems. First, they learned that there was an undisclosed easement. (Doc. 42 at 6). Second, they found the property to be "significantly smaller" than Boyd led them to believe. (*Id.*). And third, they discovered that the disposal-area part of the septic system was

---

[1] The Hugunines name both "Lake Homes Realty, LLC," and "Lake Homes Realty, LLC d.b.a. Lake Homes Realty of West Alabama" as defendants. (Doc. 42 at 2). They allege that Lake Homes Realty of West Alabama "is an entity in name only," and otherwise is indistinguishable from Lake Homes Realty, LLC. (*Id.*). The Court will refer to both as "Lake Homes Realty."

on somebody else's land, and it would cost $5,000 to remedy. (*Id.*).

The Hugunines allege that Anderson (the listing agent) knew the precise boundaries and knew about the easement, which they say charges Boyd (the buyers' agent) with constructive knowledge of those facts. (*Id.*). They also fault Boyd for ordering a septic *tank* inspection instead of a septic *system* inspection, which they say would have revealed the septic issue. (*Id.*).[2]

The contract for the sale included the following release provision:

> Seller and Buyer agree to discharge and release the brokers and agents from any claims, demands, damages, actions, causes of actions or suits at law arising in any way from this Contract or related to the Property or conditions of the Property.

(Doc. 46-2 at 10).

## II.    Procedural Background

The Hugunines filed this lawsuit in November 2020. (Doc. 1). After amending and dismissing parties, the remaining defendants are the Lake Homes Realty entities and several of Lake Homes Realty's agents. (Doc. 42 at 2–3). The operative complaint's claims are: (1) negligence (or wantonness); (2) breach of fiduciary duty; (3) negligent (or wanton) hiring, supervision, and training; (4) negligence (or wantonness) again; (5) fraudulent (or innocent) misrepresentation; (6) fraudulent suppression; (7) breach of contract; and (8) nuisance. (Doc. 42).

---

[2] The Hugunines allege that the offer and the contract both said that "**Buyer** requires a sewer/septic system inspection at Buyer's expense." (Docs. 46-1 at 7, 46-2 at 7).

The defendants moved to dismiss with three arguments. (Doc. 46). First, they argue that the Hugunines released them from liability. Second, they say the claims fail because the Hugunines contractually disclaimed reliance on any of the agents' representations. And third, they contend that the doctrines of *caveat emptor* and constructive notice defeat every claim except Count 3.

## STANDARD OF REVIEW

The Court must accept the plaintiff's well-pleaded allegations in the complaint as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *Crowder*, 963 F.3d at 1202. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## DISCUSSION

The Court grants the defendants' motion because the release provision in the contract covers and precludes liability for each of the Hugunine's claims.

## I.  The Court can consider the contract at the motion-to-dismiss stage

Federal Rule of Civil Procedure 12(d) provides: "If, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." But Eleventh Circuit precedent permits consideration of "an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged." *SFM*

*Holdings, Ltd. v. Banc of Am. Secs., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010). The Hugunines referenced the contract in their complaint. (Doc. 42 at 3–5). And the release provision plays an essential role in their eight claims. Further, the Hugunines do not challenge the authenticity of the release provision.[3] So the Court will consider the release provision at this stage of the litigation.

## II.    The Release Provision's Enforceability

"[I]n the absence of fraud, a release supported by a valuable consideration, unambiguous in meaning, will be given effect according to the intention of the parties from what appears within the four corners of the instrument itself." *Cleghorn v. Scribner*, 597 So. 2d 693, 696 (Ala. 1992). The defendants argue that the Hugunines "released the [defendants] from all claims associated with the sale." (Doc. 46 at 7).

The Hugunines make a single counterargument: that the release is void as against public policy because the provision, "if held to be legal, would only serve to promote such behavior by other parties in the future." (Doc. 48 at 6–7). They rely exclusively on a single federal district court decision that refused to enforce a contract waiver provision "to the extent the contract disclaims liability for [the

---

[3] The Huguniness do, however, challenge the authenticity of the agency-disclosure provision in the contract. They allege that Boyd and Anderson altered the contract by "changing matters regarding agency disclosures from that which had been disclosed to a falsified relationship with a new and unrelated Agency to cover up the consensual dual agency relationship." (Doc. 42 at 5). The written offer listed "Lake Homes Realty of West Alabama" as "[a]n agent of both the Seller and Buyer" and "acting as a limited consensual agent." (Doc. 46-1 at 2). But the contract itself listed "Lake Homes Realty of West Alabama" as the seller's agent and "REMAX Hometown Properties" and the buyers' agent. (Docs. 46-1 at 2, 46-2 at 2).

defendant's] own active negligence." *AGF Marine Aviation Tr. v. LaForce Shipyard, Inc.*, No. 02-cv-0834-CG-L, 2006 WL 2402345, at *4 (S.D. Ala. Aug. 18, 2006). And the *AGF* court relied solely on an Alabama Supreme Court holding that "the provisions of a contract which would exempt one of the parties from the consequences of its own negligence is void as against public policy for the reasons that such a provision would foster negligence in the performance of a contract and not deter it." *Alabama Great Southern Railroad Co. v. Sumter Plywood Corp.*, 359 So. 2d 1140, 1145 (Ala. 1978) (analyzing the enforceability of an indemnity provision). But the Hugunines ignore the fact (as did the district court in *AGF*) that the Supreme Court of Alabama explicitly modified the above-quoted *Alabama Great Southern Railroad* holding just two years later:

> [A]fter carefully reviewing all of the authority in this state, we are compelled to conclude that, if the parties knowingly, evenhandedly, and for valid consideration, intelligently enter into an agreement whereby one party agrees to indemnify the other, including indemnity against the indemnitee's own wrongs, if expressed in clear and unequivocal language, then such agreements will be upheld. To the extent that *Alabama Great Southern Railroad Co. v. Sumter Plywood Corp.*, *supra*, holds otherwise, it is hereby modified.

*Indus. Tile, Inc. v. Stewart*, 388 So. 2d 171, 176 (Ala. 1980). So the Court declines to follow *AGF* or *Alabama Great Southern Railroad*.

The Alabama Supreme Court has since held that certain *anticipatory* releases are enforceable as to negligence but not wantonness. *See Barnes v. Birmingham Int'l Raceway, Inc.*, 551 So. 2d 929, 933 (Ala. 1989). And it held that public policy barred

enforcement of an anticipatory release for prospective intentional torts. *See Reece v. Finch*, 562 So. 2d 195, 200 (Ala. 1990). But this case isn't about release from prospective torts. By the time the Hugunines' executed the contract (including the release), the defendants' allegedly injurious conduct had already occurred. As a result, the Court finds that the release provision is not void as against public policy.

The Hugunines make no other arguments. They don't argue that the release itself was a product of fraud, misrepresentation, duress, bad faith, or other unlawful means. They don't argue that the provision lacked consideration or is ambiguously written. And they make no textual arguments that their claims fall outside the scope of the release provision. So the Court will enforce the release provision here.

### III.    Does the release cover and bar the plaintiffs' claims?

The release provision says that the Hugunines "discharge and release the brokers and agents from any claims, demands, damages, actions, causes of actions or suits at law arising in any way from this Contract or related to the Property or the condition of the property." (Doc. 46-2 at 10). And all eight of their claims fall within the scope of that release.

1. Counts 1, 2, 4, 5, 6, and 8 all "relate[] to the Property or the condition of the property." (*Id.*). For each of these claims, the Hugunines allege actions (or inactions) that the defendants' took about their representation of the Hugunines during the process of purchasing the Riccios' property. Those allegations, and each

of those claims, fall within the scope of the release provision.

2. Count 3 alleges that the entity–defendants negligently (or wantonly) hired, supervised, and trained their employees. (Doc. 42 at 14). To prevail on this claim, the Hugunines must prove that: (1) the employee committed a common-law tort; (2) the employer knew of the employee's incompetency or would have known of the incompetency had it exercised due and proper diligence; and (3) that the employer failed to respond adequately after gaining notice of the incompetency. *Hobbs v. U.S. Xpress, Inc.*, No. 7:18-cv-2129-LSC, 2021 WL 913398, at *5 (N.D. Ala. Mar. 10, 2021).[4] And the Alabama Supreme Court described the claim as follows:

> In the master and servant relationship, the master is held responsible for his servant's incompetency when notice or knowledge, either actual or presumed, of such unfitness has been brought to him. Liability depends upon its being established by affirmative proof that such incompetency was actually known by the master or that, had he exercised due and proper diligence, he would have learned that which would charge him in the law with such knowledge. It is incumbent on the party charging negligence to show it by proper evidence.

*Synergies3 Tec Servs., LLC v. Corvo*, 319 So. 3d 1263, 1276 (Ala. 2020).

Under this Court's and the Alabama Supreme Court's discussions of liability for hiring, training, and supervision of employees, the defendants' liability depends (at least in part) on the actions of its agents during the process of helping the plaintiffs purchase the property at issue. And, indeed, the Hugunines' injuries for

---

[4] And for wantonness, the plaintiff must also prove that the employer hired, trained, supervised, and retained the employee with knowledge of the incompetency and being conscious that, from doing so, injury will likely or probably result. *Ex parte Essary*, 992 So. 2d 5, 9 (Ala. 2007).

this claim are the same as for the other claims, namely, that they would not have purchased the Riccios' property and suffered economic damages regarding the value of the Riccios' property. (Doc. 42 at 7–8, 15). Thus, this claim is a "cause of action[] . . . arising in any way from th[e] Contract or related to the Property or the condition of the property." (Doc. 46-2 at 10).

3. Count 7 alleges breach of contract. (Doc. 42 at 21). The release provision—releasing liability for any "cause of action[] . . . arising in any way from th[e] Contract—plainly covers this claim. (Doc. 46-2 at 10).

\* \* \*

For the reasons above, the Court **GRANTS** the defendants' motion to dismiss (doc. 46) and **DISMISSES WITHOUT PREJUDICE** the plaintiffs' Second Amended Complaint (doc. 42). The Hugunines may file a Third Amended complaint by **February 25, 2022**; otherwise the Court will dismiss this case with prejudice.

**DONE** and **ORDERED** on January 31, 2022.

**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE