## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

**WILLIAM R. HUGUNINE,** *et al.***,**
    Plaintiffs,

v.                                              Case No. 1:20-cv-1883-CLM

**LAKE HOMES REALTY, LLC,**
*et al.***,**
    Defendants.

## MEMORANDUM OPINION

    The Hugunines sued Lake Homes Realty and several of its agents based on Lake Homes' involvement in a real estate transaction. This court dismissed the plaintiffs' amended complaint without prejudice because the Hugunines contractually released the defendants from liability. *See Hugunine v. Lake Homes Realty, LLC*, 2022 WL 289161 (N.D. Ala. Jan. 31, 2022). The Hugunines filed a third amended complaint, and the defendants moved to dismiss it (doc. 55). The court agrees with the defendants, so it **GRANTS** the motion to dismiss (doc. 55) and dismisses the third amended complaint with prejudice. (Doc. 51).

## STANDARD OF REVIEW

    Under Federal Rule of Civil Procedure 8(a)(2), a plaintiff must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." To survive a motion to dismiss under Rule 12(b)(6), the "[f]actual allegations [in the complaint] must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to

'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. 544, 556).

## STATEMENT OF THE ALLEGED FACTS

William and Frances Hugunine entered into an agency agreement with Tracy Boyd, an agent of Lake Homes Realty,[1] to find a property to purchase. Nicole Anderson, another Lake Homes agent, listed the property the Hugunines ultimately purchased. It was owned by Anthony and Terri Riccio. The Hugunines allege they didn't know Boyd was acting as a "consensual dual agent" for the property listed by another Lake Homes Agent.

Boyd visited the Riccio's property with the Hugunines and pointed out all the relevant boundaries. The Hugunine's then made an offer to buy the property from the Riccios, and after reaching an agreement signed a written contract for the property. That contract contained the following release provision:

> Seller and Buyer agree to discharge and release the brokers and agents from any claims, demands, damages, actions, causes of actions or suits at law arising in any way from this Contract or related to the Property or conditions of the Property.

(Doc. 46-2 at 10).

After purchasing the property, the Hugunines discovered three problems that form the basis of this lawsuit: (1) there was an undisclosed easement, (2) the property was "significantly smaller" than Boyd led them to believe, and (3) the disposal-area part of the septic system was on someone else's land, and would cost $5,000 to remedy.

---

[1] The Hugunines name both "Lake Homes Realty, LLC," and "Lake Homes Realty, LLC d.b.a. Lake Homes Realty of West Alabama" as defendants. (Doc. 42 at 2). They allege that Lake Homes Realty of West Alabama "is an entity in name only," and otherwise is indistinguishable from Lake Homes Realty, LLC. (*Id.*). The Court will refer to both as "Lake Homes Realty."

The Hugunines allege that Anderson (the listing agent) knew the precise boundaries and knew about the easement, which they say charged Boyd (the buyers' agent) with constructive knowledge of those facts. They also fault Boyd for ordering a septic tank inspection instead of a septic system inspection, which they say would have revealed the septic issue.

After filing their third amended complaint, the operative claims against Lake Homes Realty and several of its agents are: (1) wantonness, willful, and or intentional misrepresentation, (2) breach of fiduciary duties, (3) wanton hiring, supervision, and training, (4) wanton, willful, and/or intentional breach of duties, (5) wanton, willful, and/or intentional fraudulent misrepresentation, (6) suppression, (7) breach of contract establishing the agency relationship, and (8) nuisance. (Doc. 51).

## DISCUSSION

The defendants moved to dismiss the plaintiffs' third amended complaint. (Doc.55). The basis of their arguments is the same as their motion to dismiss the second amended complaint—the release the plaintiffs signed absolves the defendants of liability for these claims and is enforceable, the plaintiffs contractually disclaimed reliance on the defendants' representations, and in any event, the claims are barred by *caveat emptor* and constructive notice.

The Hugunines respond that the defendants had prospective duties under the contract and committed prospective intentional and wanton torts, which cannot be released under Alabama law. (Doc. 61) They also argue that the release clause they signed lacked consideration. (*Id.*) But other than the standard of review, the Hugunines cited no caselaw that supports their arguments, and five pages of their response simply repeat the allegations in the amended complaint.

For the reasons stated below, the court will grant the defendants' motion to dismiss because the release provision is still enforceable, and it still covers and precludes liability for each of the Hugunines' claims.

## I.   The Release Provision's Enforceability

In dismissing the Hugunines' second amended complaint, this court held that:

> The Alabama Supreme Court has since held that certain anticipatory releases are enforceable as to negligence but not wantonness. See *Barnes v. Birmingham Int'l Raceway, Inc.*, 551 So. 2d 929, 933 (Ala. 1989). And it held that public policy barred enforcement of an anticipatory release for prospective intentional torts. See *Reece v. Finch*, 562 So. 2d 195, 200 (Ala. 1990). But this case isn't about release from prospective torts. By the time the Hugunines' executed the contract (including the release), the defendants' allegedly injurious conduct had already occurred. As a result, the Court finds that the release provision is not void as against public policy.

*Hugunine*, 2022 WL 289161, at *3.

The Hugunines took that as a call to add those specific allegations to their third amended complaint (doc. 51). So they added the words "wanton, willful, and intentional" throughout the complaint in what looks like an effort to invoke *Barnes*, and they added the word "subsequent" 24 times to try to invoke *Reece*.

But "a formulaic recitation of the elements of a cause of action" cannot survive a motion to dismiss under Rule 12(b)(6). *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That's exactly what the Hugunines have done in their new complaint. For example, in purporting to add "wantonness" claims, the plaintiffs now state allegations such as "[t]he Defendants subsequent conduct was wanton, willful and/or intentional . . ." (doc. 51, ¶ 14) and "[a]s a result of the wanton, willful and/or intentional conduct of the Defendants, Plaintiffs . . . entered into a contract." (doc. 51, ¶ 15). They also add those same words to existing allegations to try to state claims for wantonness. (Doc. 51, ¶ 19). In fact, the plaintiffs add the term "wanton" to the title or description of all eight counts. (Doc. 51). But

simply adding in the magic word "wanton" doesn't transform the allegations. So the third amended complaint fails to invoke the rule against anticipatory releases of wantonness set out in *Barnes*. 551 So. 2d at 933.

The same is true for the Hugunines' addition of the word "subsequent." For example, in Count V of the second amended complaint, the plaintiffs alleged that

> [t]he Lake Homes Defendants (either directly or vicariously through those for whom they are responsible) made material representations, including statements to the Plaintiffs that the property which they were buying was greater in size than that which they actually purchased, while at the same time withholding the true information. They also made misrepresentations and withheld information regarding the easement which crossed the Plaintiffs' land, misrepresented the state or condition of the septic system, and by their conduct (or lack thereof) misrepresented the same, as well as their role in the process.

(Doc. 42, ¶ 47). Then in the third amended complaint, they alleged that

> The Lake Homes Defendants either directly or vicariously through those for whom they are responsible, wantonly, willfully and/or intentionally made material representations, including *subsequent* alterations of documents and wantonly, willfully and/or intentionally *subsequently* misrepresented the state or condition of the septic "system", and by their conduct or lack thereof *subsequently* wantonly, willfully and/or intentionally misrepresented the same.

(Doc. 51, ¶ 44) (emphasis added).

This pattern repeats itself over and over throughout the third amended complaint. *See* ¶¶ 14, 20, 21, 22, 46, 47, 48, 50, 51, 52, 55, 56, 59, 60, 62. But stating that the defendant acted subsequently, *i.e.*, committed

a prospective intentional tort under *Reece*, 562 So. 2d 195, doesn't make it so. In fact, this court already held that "[b]y the time the Hugunines' executed the contract (including the release), the defendants' allegedly injurious conduct had already occurred. As a result, the Court finds that the release provision is not void as against public policy." *Hugunine*, 2022 WL 289161, at *3. That the plaintiffs added the word "subsequently" throughout their third amended complaint does not change that fact. So these attempts to address the pleadings deficiencies must fail.

## II.   Consideration

In its previous opinion dismissing the Hugunines' second amended complaint, this court also reasoned that

> The Hugunines make no other arguments. They don't argue that the release itself was a product of fraud, misrepresentation, duress, bad faith, or other unlawful means. They don't argue that the provision lacked consideration or is ambiguously written. And they make no textual arguments that their claims fall outside the scope of the release provision. So the Court will enforce the release provision here.

*Hugunine*, 2022 WL 289161, at *3.

The Hugunines assert in their new complaint that "[t]his contract contained an unbargained for release clause and for which the plaintiffs received no consideration." (Doc. 51, ¶ 16). But the court agrees with the defendants that "the services of Boyd, the use of a form licensed to her, and the allegation that she completed the Contract on their behalf all constitute consideration for the release." (Doc. 62 at 8). As the defendants point out, "[t]he slightest consideration is sufficient to support the most onerous obligation." *Colburn v. MidState Homes, Inc.*, 289 Ala. 255, 266 So. 2d 865 (1972). So this new allegation must also fail.

—

At bottom, this case is still about whether the release clause the Hugunines signed is enforceable and whether the Hugunines' claims fall within the scope of that clause. The answer to both questions is still "yes," despite the Hugunines' attempts to plead their way out of it. *Hugunine*, 2022 WL 289161.

## CONCLUSION

For the reasons stated above, the court **GRANTS** the defendants' motion to dismiss (doc. 55) and **DISMISSES WITH PREJUDICE** the plaintiffs' third amended complaint (doc. 51). The court will enter a separate order that carries out this opinion.

**DONE** and **ORDERED** on February 9, 2023.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE